WILLIAM J. BEATTIE *v.* GAY'S EXPRESS, INC. & TRUSTEES.

May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

132

*Stanley L. Burns* for plaintiff.

*Raymond Trainor, Henry F. Black* and *Alfred A. Guarino* for defendant.

SHERBURNE, J.  Prior to the events leading up to this controversy the plaintiff and defendant were each doing an interstate trucking business.  The plaintiff had his office at Wilder in the Town of Hartford, and the defendant had offices at White River Junction and Bellows Falls.  On July 5, 1938, the parties entered into a contract under seal, conditioned upon the approval of the Interstate Commerce Commission, whereby the defendant agreed to buy the plaintiff's transportation business, including his trucks, a building lot and two story frame structure at Wilder, which was used for a terminal building, and his office and garage equipment therein, for the sum of $8,000.00, and the plaintiff agreed to sell and deliver the same.  Pending approval of the sale by the Commission the defendant leased the plaintiff's trucking business with the approval of the Commission, and took possession of the property and commenced operation of the business before August 5, 1938, as lessee.  On this date the plaintiff's terminal building and its contents of office and garage equipment were completely destroyed by fire.  On the next day S. B. Man-

ning, the defendant's president and agent, had a conference with the plaintiff, and the following conversation took place: Plaintiff: "What are we going to do now this building is burned down?" Manning: "Well, Bill, you must have had some insurance on it." Plaintiff: "Yes, there is $3,500.00 on it." Manning: "We will let the deal go along. You give me credit for your insurance money and we will pay you the difference." Plaintiff: "That is O.K." Subsequently the plaintiff received $4,000.00 insurance upon the building and contents.

At a session of the Interstate Commerce Commission, held on December 22, 1938, the sale to the defendant was approved, and it was ordered that unless the authority granted was exercised on or before January 15, 1939, the order of approval should be of no further force and effect. On January 13, 1939, the plaintiff and Manning, and a Mr. Bliss, defendant's treasurer, met to consummate the sale and to make final settlement. All of the property was transferred to the defendant either at or prior to this meeting. At this meeting Bliss, in the presence of Manning and the plaintiff, made the following computation:

| | |
|---|---:|
| (a). Due Mr. Manning personally from plaintiff for advances made by Manning to plaintiff................. | $ 746.13 |
| (b). Due Gay's Express, Inc. from plaintiff on account of protested checks of plaintiff paid by Gay's Express Inc. | 571.23 |
| (c). Due Gay's Express, Inc. from plaintiff for money paid to release an attachment on some of plaintiff's personal property............... | 195.87 |
| (d). Notes delivered January 13, 1939, to plaintiff by Gay's Express, Inc..... | 2500.00 |
| (e). Credit to Gay's Express, Inc. on account of insurance money received by plaintiff..................... | 3500.00 |
| (f). Check of Gay's Express, Inc. delivered to plaintiff January 13, 1939 | 486.77 |
| Total ..................... | $8000.00 |

The plaintiff did not disagree to the computation, and accepted the debits in the computation and delivery of the de-

fendant's check and notes in full satisfaction and settlement of the defendant's obligation under the contract. The items numbered (a), (b) and (c) were all justly due and owing from the plaintiff to the defendant or Manning personally. The defendant on or shortly after January 13, 1939, gave Manning credit on its books for the sum of $746.13 mentioned in item (a).

In this action the plaintiff seeks to recover a balance of $4000.00 alleged to be due under the contract of sale. The defendant, among other things, pleaded payment and that there was a settlement made between the parties, the terms of which had been fully complied with by the defendant. Findings containing the above enumerated facts were filed, and judgment was entered for the defendant.

The findings show that the lower court decided the case upon the basis of payment and accord and satisfaction. The plaintiff argues that the court erred in deciding the case on issues outside the pleadings, and in particular claims that accord and satisfaction was not pleaded. We think that the plea of a settlement and performance of its terms was sufficient under the circumstances to show an accord and satisfaction.

The principal item in dispute is that of $3500.00 for insurance. It is contended by the plaintiff that as the insurance was not mentioned in the contract and was paid for by him, it is something in which the defendant had no interest. No decision of this Court has been called to our attention which bears upon this exact point, but it appears from annotations in 22 A. L. R. 575; 41 A. L. R. 1272; 46 A. L. R. 1126; and 101 A. L. R. 1241, under the heading: "Who must bear loss due to destruction or deterioration of real property pending contract for its conveyance", that there is considerable conflict in the decisions in other jurisdictions as to who assumes the risk of a partial destruction or deterioration of the property from the date of making an unconditional contract for the sale of real property and before a conveyance is made, and it is shown that if the contract of sale is conditional, the purchaser generally does not assume the risk. According to some of the authorities cited, as well as in some of the cases printed in connection with these annotations, it appears that in some cases of destruction, like a fire, the contract is no longer binding upon the purchaser. There are also annotations upon "Rights of vendor and purchaser *inter se* in respect of

proceeds of insurance'' in 37 A. L. R. 1324; 40 A. L. R. 607; and 51 A. L. R. 929, where a number of authorities are cited to the proposition, that where the loss would, in the absence of insurance, fall upon the purchaser, the latter may, if ready, able and willing to complete his contract, require the insurance money to be used towards the reduction of the unpaid purchase money, although the contract was silent as to the insurance. See also 66 C. J. 1055, Vendor and Purchaser, Sec. 815, which states: ''As between the vendor and the purchaser, the better rule would seem to be that it (the insurance) should belong to whichever must bear the loss resulting from the injury to the property. Hence, if the loss falls on the purchaser, he is entitled to the benefit of the insurance money, and if it is collected by the vendor, he will hold it for the benefit of the purchaser, who will be entitled to credit therefor on the unpaid purchase price.''

Although the facts are not entirely identical with those in this case the following quotation from *William Skinner & Sons Ship-Building & Dry-Dock Co.* v. *Houghton et al.*, 92 Md. 68, 48 Atl. 85, 87, 89 Am. St. Rep. 485, decided in a jurisdiction where the vendee had been held to bear the loss by fire, may be pertinent:

> ''Without reference to the authorities, it would seem to be manifestly just and equitable that when a court of equity is called upon to determine to which of two parties a fund is to be paid, resulting from the destruction of a property in which both were interested, but the one has received payment from the other of all the interest he had, while the other is to be the sufferer by reason of the destruction of the property, it should be awarded to the latter. If that be not so, the one would receive more than the contract contemplated, while the other would receive less. For example, if the value of the property, worth at the time of the sale $50,-000, has been lessened by the fire to the extent of $15,000, the vendor would get $65,000, and the vendee would get a property worth only $35,000; the one thus getting 30 per cent. more, and the other 30 per cent. less, than they originally contracted for, under Mrs. Houghton's contention. Such results would not only encourage carelessness in the use of the property by vendors, but would materially increase the danger of incendiarism.''

136

The only comment we need make is, if the plaintiff is correct in his contention as to the law, he expects to make a profit of $3500.00 to $4000.00 out of the fire at his terminal building, because, as he says, the defendant is bound to pay the purchase price of $8000.00 without deduction of the insurance money received by the plaintiff.

It is unnecessary to review the authorities further, because we need not determine how the fire affected the contract between the parties or whether the defendant was entitled to the insurance. It is clear that the parties considered the matter so far doubtful as to make it the subject of a mutual adjustment or settlement, 1 C. J. S. 517, Accord and Satisfaction, Sec. 32, and mutually agreed that the defendant should have $3500.00 of the insurance in reduction of the purchase price. The situation is covered by the rule that, if one, who has a disputed or unliquidated claim against another, accepts and retains a less amount than he claims is due, which is offered by the other in full settlement of such claim, it operates as an accord and satisfaction of such claim, and further controversy respecting it is ended. *Siwooganock Guaranty Savings Bank* v. *Cushman et ux.*, 109 Vt. 221, 243, 195 Atl. 260; *Harrington* v. *Mutual Benefit Health and Accident Ass'n.*, 108 Vt. 48, 182 Atl. 179; *Keefe* v. *Fraternal Protective Ins. Co. et al.*, 107 Vt. 99, 102, 176 Atl. 305; *Dow* v. *A. C. Cheney Piano Action Co.*, 104 Vt. 350, 357, 160 Atl. 274.

It is argued that the court erred in finding that the contract had been modified. The findings conclude with the statement that the contract "was never altered or modified except as hereinbefore stated." The previous findings do not show that the original contract was in any way altered or modified. No alteration or modification of the original contract was claimed by the defendant. The difficulty here seems to arise from a misunderstanding of what an accord and satisfaction is. An accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement. 1 Am. Jur., Accord and Satisfaction, Sec. 1.

The fact that the contract was under seal does not alter the situation. We have held repeatedly that an oral agreement relating to a covenant in a sealed instrument and which has been

acted upon may be shown as a defense of waiver in an action on the instrument based on the breach of such covenant. The cases are collected and discussed in *In the Matter of The Estate of William E. Delligan,* 111 Vt. 227, 238, 13 Atl. 2d. 282; and in *Martin et al.* v. *Martin & Carpenter,* 98 Vt. 326, 328, 127 Atl. 292, 55 A. L. R. 697. As said in the latter case "Such waiver is held not to be a modification or change in the terms of the original agreement, but is deemed within the rule that a contract under seal may be released, surrendered, or discharged by matters *in pais.*" As said in *Agel & Levin* v. *F. R. Patch Mfg. Co.,* 77 Vt. 13, 15, 58 Atl. 792, "Even a contract under seal may be discharged by the performance of a subsequent parol agreement."

No question relative to the performance of the new agreement can well be raised if the other items were properly allowed, as with the insurance money they total the purchase price of $8,000.00.

It is urged that the court erred in finding that the plaintiff agreed to accept $487.77 and five $500.00 notes in full satisfaction of the contract. It is sufficient to say that no such finding was made.

■ Items (b), (d) and (f) are not disputed. Plaintiff excepts to the $746.13 in item (a) for advances made by Manning to the plaintiff. Defendant's evidence tended to show that at the meeting on January 13, 1939, to complete the deal, at which Manning, Bliss, defendant's treasurer, and the plaintiff were present, the amount the plaintiff had received from Manning was computed to be $746.13, and that the plaintiff approved it in an account marked "advanced by Manning." The plaintiff admitted that it was all figured out, but denied that the amount of $746.13 was correct. Manning was unable to find and produce this account at the trial and could not recollect all of the items that went into it. While Manning's testimony was not too satisfactory he was corroborated by Bliss as to the total agreed upon. On the other hand the fact that plaintiff·continued to work for the defendant for over a year and delayed so long in bringing suit does not add weight to the plaintiff's case. We do not need to review the evidence further. Sufficient appears to support the finding.

■ As to item (c) defendant's evidence tends to show that the plaintiff had to forward $310.00 to Boston to release an at-

138

tachment upon one of his trucks. Plaintiff had only $116.93, and at his request the defendant put in the balance of $193.07, and wired the money to Boston and had to pay $2.80 charges for forwarding, so defendant had to advance $195.87 in all. Because in its application of July 5, 1938, to the Interstate Commerce Commission this item was only set out as $193.00 plaintiff claims that is all that should be allowed here. The application to the Commission could only be used for the purpose of showing a contradictory statement, and it was for the court to decide which evidence it would believe. No error appears here.

We have disposed of all exceptions which are adequately briefed, and find no error.

*Judgment affirmed.*