MYRTIE M. HOADLEY *v.* CLAYTON H. HOADLEY ET AL.

October Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 8, 1944.

76

*Lee E. Emerson* for the defendants.

*Hubert S. Pierce* for the plaintiff.

SHERBURNE, J. The plaintiff is the widow of Bradley S. Hoadley, late of Lowell, and the mother of defendant Clayton H. Hoadley. The defendant Florence S. Hoadley is the wife of Clayton H. Hoadley. In her bill of complaint the plaintiff avers that on May 26, 1943, she was the owner of the home farm of the late Bradley S. Hoadley, including the Long Place, so-called, and of certain live stock and tools thereon, and that on said date she conveyed and delivered said real estate and personal property by a conditional deed, with a bill of sale included therewith, to her son, the defendant Clayton. This deed was conditioned as follows:

> "The foregoing premises and property is conveyed on condition that the said Clayton H. Hoadley allow the said Myrtie M. Hoadley to have and occupy as a home on the premises the same rooms on the place that she has been occupying heretofore and that said Clayton H. Hoadley shall support his mother as a dutiful son should in sickness and in health and provide her with a suitable amount of pocket money for

small items and shall give her a christian burial at her decease, that in event that he fails so to do that this property and premises shall revert to this grantor. . . . ."

The bill then goes on to show that the plaintiff with her late husband and daughter, Lillian, had occupied the premises as a home for many years, and that prior to the death of her husband the house thereon had been divided into two tenements, and that she and her husband and daughter had lived in one part and the defendants in the other part, and that when the deed to the defendant Clayton was made it was intended by the parties thereto that she was to continue to occupy that part of the house formerly occupied by her and her daughter and husband. The bill further shows that the plaintiff is 67 years old and has been for several years afflicted with high blood pressure, and has been advised by her doctor to avoid active physical exertion and nervous excitement; that her daughter Lillian has always lived with her at her home, and has looked after and cared for her, doing the arduous household chores and giving her the medicines prescribed by her doctors; and that the plaintiff has seven children, six of whom are married, and that her relations with them and their families have always been close and affectionate, and that there had been frequent calls made by them and their families to her home, and by her to theirs; all of which the defendants well knew. It is alleged that after the conveyance of the property the defendant Florence entered the plaintiff's part of the house and turned off the electric lights and prevented the plaintiff from using an electric flatiron, and quarreled with her and threatened her with violence to such an extent that she fears to be left alone with the defendants; that the defendant Clayton has told her that she and his wife could not get along together and that she would have to leave and he would move her to another house; that after she refused to leave he has locked the doors of her home and has continually refused to let her and her daughter Lillian enter, and has notified her that he had taken possession of all of her rooms, and that if she came back she would have to live where he should decide, and that in no event can the said Lillian live with her nor any of her children visit her on the premises, and that he is the owner of the premises and that henceforth she would have to do as he dictated; that he has refused to

supply her with sufficient money for small items which she requires for herself and for proper medical attention, and that she has had to depend upon money for these purposes from her other children. She further avers that she desires to live the rest of her life in her home, and have her daughter Lillian live with her to give her the necessary care that she now and will hereafter require. The bill alleges that the defendants are about to sell and encumber the said real and personal property in order to deprive the plaintiff of her interest therein, unless restrained, and that the plaintiff has no adequate remedy at law to compel the defendants to convey the property to her and to restrain them from selling and encumbering the same; and prays "that the court find that the defendants have forfeited their rights under said deed, and that the defendants be ordered to convey said real and personal property by proper deed and bill of sale to the plaintiff and that a writ of possession be issued restoring to the plaintiff said real and personal property; and that the defendants, their servants and agents, be enjoined from selling and/or encumbering any and all of said real and personal property; and that an injunction order be forthwith issued; and for such other and further relief in the premises as to this court shall seem meet."

The defendants separately pleaded to the bill. We will, therefore, first take up the case against the defendant Clayton H. Hoadley. Until we take up the case against the other defendant we shall use the word "defendant" as referring to said Clayton. The defendant filed an answer in which were incorporated a demurrer and a special plea, and also added thereto a cross-bill. The plaintiff filed a replication to the answer and a demurrer to the cross-bill and set the plea for hearing. Defendant's demurrer was overruled, subject to defendant's exception, and the benefit thereof was saved until final hearing, the plea was adjudged insufficient and was overruled and plaintiff's demurrer to the cross-bill was sustained, to all which the defendant excepted. After hearing the evidence findings were made and decree entered for the plaintiff.

We will take up the numerous exceptions in the order briefed. The first ground of the defendant's demurrer is in substance that the bill prays for a forfeiture on the facts alleged, and that it is outside the province and function of a court of equity to set up and enforce a forfeiture. A somewhat similar situation was presented in *Abbott* v. *Sanders,* 80 Vt 179, 66 A 1032, 13 LRANS

725, 130 Am St Rep 974, 12 Ann Cas 898. There the bill set up a conveyance of real and personal property to the defendant husband, conditioned that the grantee support the plaintiff during her life, and alleged a substantial breach of the condition, and prayed for a decree declaring the defendants' rights forfeited, and their title and equity extinguished and foreclosed. The defendants demurred and contended that the case presented was one of forfeiture, and that forfeitures will not be enforced by a court of equity. The demurrer was overruled below, the bill adjudged sufficient, and decree was entered according to the prayer of the bill; and upon appeal the decree was affirmed. It is there said, omitting citations: "The form that the equitable remedy will take in this State is determined by our holding regarding conditional deeds. With us a conditional deed is treated as a mortgage to secure the grantee's performance of the condition contained in the deed. . . . . The situation being the same as if the condition were omitted from the oratrix' deed and contained in another deed given back by the defendant husband, it is clear that the rights of the defendants may be foreclosed by bill. In this State, a conveyance conditioned for the support of the grantee is treated as a mortgage, whatever the form in which the support is to be furnished." The prayer of the bill in the instant case does not expressly ask that the defendants' title and equity be foreclosed, but, after asking that the court find that the defendants have forfeited their rights under the deed, it contains a general prayer asking for such other and further relief as to the court shall seem meet. Under the general prayer the plaintiff may have relief agreeable to the case made by the bill; and the scope of the bill is to be determined; not by the special prayer for particular relief, but by the case stated. *Firemen's Ins. Co.* v. *Butcher,* 102 Vt 183, 189, 147 A 267; *Averill* v. *Vermont Valley Railroad,* 88 Vt 293, 298, 92 A 220; *Western Union Tel. Co.* v. *Bullard,* 67 Vt 272, 280, 31 A 286; *Eureka Marble Co.* v. *Windsor Mfg. Co.,* 47 Vt 430, 450; *Danforth* v. *Smith,* 23 Vt 247, 257. If the facts alleged make out a case entitling the plaintiff to have the defendants' equity foreclosed under the general prayer, it is unnecessary to decide if the special prayer is inadequate to this purpose, or whether it merely asks for a forfeiture.

The defendant takes each allegation of his conduct as above set forth at length and attempts to show that each is ambiguous and

applies to only one isolated instance, and insists that they are not sufficient to warrant a foreclosure. It may be that some of these allegations are ambiguous or insufficient, but enough is properly alleged to make out a strong case for relief, and this is too obvious to require explanation upon our part.

■ Another ground of the demurrer attacks the claimed right of the plaintiff to have her daughter Lillian live with her in the part of the house which she was to have as a home. Under the conditions of the deed the defendant was to "allow" the plaintiff "to have and occupy as a home on the premises the same rooms on the place that she has been occupying heretofore." We agree with the defendant that this language is clear and unambiguous, but the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter at the time the deed was executed, and the obvious purpose the parties had in view; and in this situation the condition is to be interpreted by its own language, and the intent of parties must be deemed to be what the condition thus interpreted declares. *Walker* v. *Pierce,* 38 Vt 94, 97; *Vermont Marble Co.* v. *Eastman,* 91 Vt 425, 444, 101 A 151; *Greene* v. *Helme,* 94 Vt 392, 393, 396, 111 A 557; *Freeguard* v. *Bingham,* 108 Vt 404, 406, 187 A 801.

By reverting to the allegations of the bill we find that prior to the execution of the deed the house had been divided and the plaintiff had lived in one part and the defendants in the other. The obvious purpose of the condition in the deed was to continue this arrangement. "Home" means one's own dwelling place; the house in which one lives. Webster's New International Dictionary, 2nd Ed. Under the language that the plaintiff was to be allowed to have and occupy as a home the same rooms that she had been occupying the clear intent was that she should have and occupy them as her own dwelling place and house, separate and apart from the defendants, and that she should have the exclusive occupation and control thereof, with the right of a tenant to entertain and have live with her any one whom she might invite. The exception to the overruling of the demurrer is not sustained.

Defendant's plea sets forth that he is 34 years of age, and that since he was 16 he had lived on the premises and assisted his father, Bradley Hoadley, during his lifetime, who was the owner of the farm at the time of his decease; that he never received any regular wages, and that after he became 21 he had a trade with his father

that if he would stay his father would will him the farm, subject only to the condition that he would make a home for his mother, the plaintiff, for the remainder of her life; that his father did make such a will, and that the contents thereof and the facts about his trade with his father were fully known to the plaintiff; that the plaintiff has the custody of such will and that it has never been presented for probate; that on January 7, 1943, the children of said Bradley Hoadley, then deceased, including the defendant, in order to carry out the provisions of the will and in order to see that the defendant was paid for his services to his father, executed and delivered to the plaintiff a quit-claim deed of the home farm and personal property, and in turn the plaintiff on May 26, 1943, executed and delivered to the defendant the conditional deed mentioned in the bill of complaint. The plea further alleges that it was a provision of the will that during the time the plaintiff might be living with her other children the defendant should not be liable for her support, and that the conditional deed varies from the terms of the will in this respect; that he has made repairs and improvements upon the farm before and after the death of his father to the value of $3000., and that his wage claim against his father's estate at the time he quit-claimed his interest in the farm totaled $10,000., which facts the plaintiff well knew; that he was induced by the plaintiff to forego his wage claim, and to sign the quit-claim deed, because she promised and agreed with him that if he would do so, she would endeavor to carry out the terms of the will, whereby he would get the farm as recompense for his labor and for money expended for repairs and improvements; that believing the farm was his he has assumed and agreed to pay the mortgage thereon, and has paid thereon, and has also assumed and paid bills of his father and his funeral expenses, taxes and insurance on the farm; that he has at all times been ready, willing and able to comply with the provisions of the will and to comply with the provisions of the conditional deed, and has complied therewith. For all these reasons he says the plaintiff should be estopped by her conduct from now claiming a forfeiture of defendant's right in the home premises.

█ █ He who claims an equitable estoppel must show that he has been misled, and thereby prejudiced, by the conduct of the other party. *West River Power Co.* v. *Bussino,* 111 Vt 137, 139, 11 A2d 263; *Weinberg* v. *Norton,* 107 Vt 279, 292, 178 A 913;

*Boynton* v. *Hunt,* 88 Vt 187, 189, 92 A 153. The plea does not show that the defendant has been misled. From the allegations it would seem that the alleged promise of the plaintiff to carry out the terms of her husband's will, whereby the defendant would get the home farm, was satisfied by a substitute performance which he accepted, whereby instead of merely getting title to the home farm conditioned for the support of the plaintiff as the will provided, he got under the deed title also to a large amount of personal property, and this additional property may well have been the consideration for the difference in terms of support between the will and deed. Nothing is alleged in the plea showing that there was not an accord and satisfaction, under the rule that an accord and satisfaction is a method of discharging a contract by substituting for such contract an agreement for the satisfaction thereof and an execution of such substituted agreement. *Beattie* v. *Gay's Express,* 112 Vt 131, 136, 22 A2d 169. Nor does the plea show that the defendant has been prejudiced. There is no denial of the allegations in the bill showing a breach of the conditions in the deed. The allegation in the plea that the defendant has complied with the conditional deed is defective because a mere conclusion and not a definite statement of fact nor a denial of the allegations of the bill showing a breach of conditions in the deed. *Central National Bank of Baltimore* v. *Conn. Mut. Life Ins. Co.,* 104 US 54, 26 L ed 693; *Foster* v. *Foster,* 51 Vt 216; 30 CJS, Equity, Sec. 308. If the will were in the case the allegation of compliance therewith would likewise be defective. Even the alleged provision in the will that the defendant should not be liable for plaintiff's support while living with her other children did not give him the right to drive her out and make her live with them. When property is devised to a son, on condition that he support his mother during life, and he fails to do so, a bill in equity by her to foreclose his interest in the property is a proper remedy. *Hoyt* v. *Hoyt,* 77 Vt 244, 59 A 845. The plea is insufficient and was properly overruled.

The cross-bill alleges the same facts as the plea, and prays that in the event the court finds the defendant has not complied with the conditions of the deed, the plaintiff be ordered to account to the defendant and reimburse him for his labor and the other items mentioned and to save him from liability upon the farm mortgage, and that the plaintiff be ordered to produce the will for probate, or satisfactorily account to the court for what has happened to it,

if within her knowledge, and that failing the production of the will for probate these proceedings be stayed until administration on the estate of Bradley Hoadley can be taken out, commissioners appointed, and defendant have the opportunity to present his claims to them.

■ There is no allegation of fraud, and for aught that appears the defendant voluntarily joined in the quit-claim deed to the plaintiff and accepted the conditional deed from her, which conveyed the farm and personal property to him. All that he had to do was to comply with the conditions thereof and eventually the farm would have been his absolutely. As we have seen the situation is the same as if the condition were omitted from the plaintiff's deed and contained in another deed given back by the defendant. Had this been done here the defendant could not successfully resist a foreclosure for a breach of the condition, nor could he get the reimbursement he asks for. *Abbott* v. *Sanders, supra.* By joining in the quit-claim deed the defendant released as against the property conveyed the right to pursue such property in satisfaction of any claim he might have against his father's estate or any claim that he might have under his father's will. Consequently the matters of the will or administration upon the estate are not germane to this proceeding. The demurrer to the cross-bill was properly sustained.

The plaintiff had testified without objection that the defendant Florence, in the presence of defendant Clayton, told her that they were trying to have her move out, and she had replied that she didn't want to, whereupon Florence said: "Let me get the bitch, I will fix her", and started for the plaintiff who was sitting in a chair in her kitchen, and Clayton and her son-in-law took hold of Florence and stopped her, and the plaintiff said to Florence "You take your room", and she replied "I never will." The plaintiff then testified without objection that this happened along toward July or the last of June, and that at that time Florence shook a paper in her face and said "I have got a warranty deed of this place." She was then asked: "How far did she get toward you? You say she started for you?", and the defendant objected that there were no such allegations in the bill, that it was immaterial and incompetent, and subject to exception the plaintiff answered: "Oh, she got about half way to me before they grabbed her in front of my kitchen stove, and I sat over by the window in a chair, and I rose up and

she got right in front of my kitchen stove, just a little ways from me." She was then asked: "How far away was that, you say?", and the defendant asked to have his objection apply to all this line of inquiry, and was told that his exception covered this particular line and this particular occasion. Plaintiff then answered that it wasn't a great ways from her. She was then asked if she had some more trouble with Clayton or Florence, and she replied: "Yes Clayton wanted me to move away." The allegations in the bill heretofore set forth that Florence entered the plaintiff's part of the house and turned off the electric lights and prevented her from using an electric flatiron, and quarreled with her and threatened her, and that Clayton had told her that she and his wife could not get along together and that she would have to leave, are broad enough to cover the questions asked as against the objection raised. This exception is not sustained. In briefing this exception defendant says that he has excepted to evidence of other quarrels upon which he says that certain numbered findings are based, and that this evidence was wrongfully admitted. Our attention is not called to the particular evidence involved nor to the transcript. This is inadequate briefing and need not be considered.

The defendant excepted to evidence given by the lawyer who drew the conditional deed that when the deed was being prepared he told the plaintiff in the presence of the defendant "that she was reserving control of that part of the house that she had occupied as her home heretofore, and I said 'That is yours, and you can take roomers if you want to.'" This evidence formed the basis for the last part of finding 9. If wrongly received, this evidence was harmless as it coincides with our construction of the deed as heretofore noted. Harmful error is not shown.

During the cross-examination of Lillian Hoadley by the defendant she was asked: "You want to be fair about this, don't you, Lillian?", and she answered "Yes sir." She was then asked: "And if you are the source of all this trouble between your mother and Clayton you are willing to remove yourself as a source of trouble, aren't you?" This question was excluded and the defendant excepted. All that the defendant says in his brief about this exception is that the question should have been permitted because the plaintiff had answered "Yes" to a question in cross-examination that the only trouble between her and Clayton was over the question as to whether Lillian should stay there. No misconduct on the

part of Lillian is pointed out, and as the plaintiff had the right to have her remain it is difficult to see how that it was necessary for her to stay away in order to do justice to the parties as the defendant claims. In fact, the overwhelming weight of evidence is to the effect that Lillian was not the real source of the trouble. Error is not made to appear.

The chancellor had been examining the defendant without objection about locking the screen door, and then asked: "So that the fact of the matter, as far as the lock was concerned, is it was put on there so that they couldn't come in if you weren't there?", and he answered: "So Lillian couldn't enter." Then the chancellor asked: "It was going to stop your mother from coming in too, wasn't it?", and he answered: "Yes sir." Whereupon defendant's attorney said: "I don't think that is any inference that should be drawn from this testimony. I object to that question." The chancellor said: "We will take the answer," and the defendant asked for and was allowed an exception. Then upon a reading of the question the defendant answered "No". The defendant admits that, although the witness answered the question both ways, the court could have interpreted the evidence to mean that the locking of the door would have resulted in keeping the plaintiff out, all other things being equal, and that it had a tendency to substantiate findings 18 and 21, yet insists that it was nevertheless error to admit it because of what had gone before, where the chancellor had made a statement in reply to a remark of defendant's attorney during the cross-examination of the defendant, which the defendant claims indicated that the chancellor had prejudged the case relative to the locking of the door, and because a little after that the chancellor had examined the defendant at considerable length relative to the door. The defendant insists that it was no part of the province of the court to cross-examine the defendant. The exception saved is not broad enough to reach these matters. Moreover, we have examined the transcript and are unable to find that the chancellor over-stepped in these particulars. Error is not made to appear.

■ The defendant excepted to all evidence of the value of the board of the plaintiff after the chancellor had found that she had been locked out of the premises, on the ground that it was outside of the issues raised by the pleadings, and to the finding based thereon, that the sum of $8.00 per week was a reasonable charge.

The original bill merely alleged that the plaintiff had been living with one of her married daughters after the defendant had refused to let her and Lillian occupy her home. On October 19, 1943, the plaintiff filed an amendment showing that defendant, after the conveyance to him, had "failed and neglected to support his mother by failing and neglecting to provide suitable clothing, food, and wood for heating her home, all as a dutiful son should." The main hearing was held October 18 to 21, 1943, at the conclusion of which the chancellor indicated that he would complete his findings. On February 8; 1944, after the chancellor had found a breach of the condition, a hearing was had for the purpose of receiving the evidence here objected to, and the evidence was received, and the matter of the expense of the plaintiff's board after the date she had been locked out was fully litigated. The decree gives the defendants another chance to perform the conditions of the deed if the defendant Clayton will pay this expense, otherwise they must surrender the property. 'There are situations in which a grantee will not be relieved in equity from the failure to perform such a condition. See *Henry* v. *Tupper,* 29 Vt 358; and *Abbott* v. *Sanders, supra,* 80 Vt 179, 182, 66 A 1032, 13 LRANS 725, 130 Am St Rep 974, 12 Ann Cas 898. If the defendants are to have another chance it is equitable that the defendant Clayton should pay this expense. However, we do not think the allegations of the bill as amended sufficient to include the subject matter, but under the circumstances the plaintiff will be allowed to make the necessary amendment to her allegations. *Fraser* v. *Nerney,* 89 Vt 257, 95 A 501; *North Troy Graded School District* v. *Troy,* 80 Vt 16, 33, 66 A 1033.

The defendant excepted to finding 9. This finding recites that at the time of the execution of the conditional deed the rooms which the plaintiff would occupy as a home were enumerated and discussed, and they were the same as the ones occupied by the plaintiff, her daughter Lillian, and her late husband before his decease, and that the lawyer who drew the deed informed the plaintiff that she would have control of that part of the house which she occupied, and that this was in the presence of the defendant. The defendant excepted "on the grounds that said finding is without evidence, the last two sentences thereof are incompetent because based upon the wrongful admission of the testimony of" the lawyer "relating to enumeration of rooms and stating to the plaintiff"

by him "that she would have control over that part of the house which she occupied, said finding is contradictory of other findings which show the defendant and his wife had a bedroom which they occupied and had control over in that portion of the home the chancellor has found Myrtie had control over, and said finding is, contrary to the intent of the parties as expressed in the conditional deed." We have already commented upon the testimony of the lawyer who drew the deed, and what we there said is applicable here as to his and our construction of the deed. The fact that the defendants had a bedroom in the main part of the house which they had occupied since their marriage, long prior to the death of plaintiff's husband, as shown in finding 4, is not inconsistent with finding 9. "That part of the house which she occupied" over which the plaintiff would have control means the rooms previously occupied, and that is clear from the context. Error is not made to appear.

The defendant excepted to finding 20, which reads:

> "The defendant, Clayton H. Hoadley, has not allowed the plaintiff to have and occupy as a home on the premises the same rooms that she has been occupying previous to the time the deed was given on May 26, and he has not supported her as a dutiful son should in sickness and health, and has not provided her with a suitable amount of pocket money for small items, all as provided for in the condition set forth in the deed of May 26, 1943."

"on the grounds that the evidence fairly construed does not justify any such finding, said finding is an erroneous conclusion of law and is wholly contrary to the intent of the parties as set forth in the conditional deed." The gist of defendant's briefing is that the defendant only attempted to keep Lillian out, as he claims he had the right, and that he was not trying to keep his mother from occupying the premises. As we have shown the defendant had no right to lock Lillian out if her mother wanted her there. Then too, the answer of the defendant to the chancellor's question heretofore mentioned tends to support the finding that the defendant has not allowed the plaintiff to occupy the premises. The defendant here asks us to consider what he said in his brief relative to the foregoing question asked by the chancellor and suggests that the chancel-

lor could not have fairly construed the evidence because he had prejudged the case. As we pointed out we found nothing in this particular to show that the chancellor had over-stepped. No error appears.

The defendant excepted to finding 21, reading as follows:

> "That since the plaintiff was locked out of her home as aforesaid the defendant Clayton has not supported the plaintiff at her home or paid for her support elsewhere."

"on the grounds that the evidence fairly construed does not justify any such finding, on the further grounds that the chancellor prejudged the case by stating before the evidence was closed that the defendant had locked his mother out, thus rendering unnecessary any evidence defendant might adduce on this point because it could not convince a mind already made up." Defendant's brief merely asks to have considered as pertinent what he said under the last exception and under the exception to the question asked by the chancellor. Our treatment of those exceptions applies here. Error does not appear.

The defendant excepted to the failure to comply with his request number 2, reading as follows:

> "Plaintiff after May 26th, 1943, relied upon her daughter, Lillian, while she was on the premises in question to attend to her needs rather than on the defendant."

on the ground that said requested finding was material, was based on the evidence, and had a tendency to show that the defendant did not breach the conditional deed. He says in his brief that the request should have been allowed, because if the plaintiff wanted some one else to perform the condition of the deed rather than defendant, he should not be prejudiced thereby. We are referred to portions of the transcript which show that the plaintiff thought that the defendant would have to look after her, but that she expected Lillian would continue to wait upon her and give her her medicines. To the extent that the plaintiff had Lillian wait upon her, rather than the defendant, he was excused, but that fact had no tendency to show that the defendant did not breach the conditions in other respects. This exception is not sustained.

Defendant excepted to the failure to find as requested in request number 13, reading as follows:

> "Defendant told his mother just previous to the execution of the deed, that Lillian could stay on the premises after the execution of the deed as long as she did not cause any trouble, but that if she caused trouble she would have to get out, plaintiff expressed herself as satisfied with this understanding and then signed the deed."

on the same grounds as the preceding exception. All that need be said here is that in the portions of the transcript pointed out there is a conflict in the evidence as to exactly what the defendant told his mother. Her version says nothing about Lillian's causing trouble. The chancellor did not have to accept the defendant's version as he may have disbelieved him when he came to weigh the evidence.

In connection with the decree the defendant calls attention to finding 16, which shows that after trouble arose the defendant offered to furnish a suitable home elsewhere and provide for the plaintiff there, and also let Lillian stay with her and pay for her keep as well. This was not an offer to comply with the terms of the deed.

The decree was dated March 6, 1944, and ordered that unless the defendants on or before May 15, 1944, and thereafter, complied with the conditions of the deed, and on or before the latter date also paid her the sum of $8.00 per week for board from July 24, 1943, while she was locked out, that the defendants within 10 days from May 15, 1944, should surrender possession of the property and reconvey same; and that in default thereof that a recording of a certified copy of the decree should convey title to the plaintiff. The defendant objects because he was not given a redemption period of one year under Chancery Rule 38, sec. 4. It is there specified that the time of redemption shall be one year unless otherwise ordered. Here it was otherwise ordered.

The defendant complains because the decree gives the plaintiff exclusive possession, and because he was not given an accounting for what he had paid on the mortgage and debts. These matters have already been answered. Error does not appear.

The defendant Florence Hoadley demurred to the bill of

complaint upon the grounds that the bill failed to show that she had any interest in the litigation, that she owned any part of the premises or was related to the other defendant, whereby she should have any interest in the premises; and that the allegations of the acts charged against her were vague, uncertain and indefinite. The demurrer was sustained, whereupon the plaintiff was allowed, subject to exception, to amend her bill, by alleging that the defendant is the wife of the other defendant, and upon the execution of the conditional deed went into possession of the premises with her husband, and they are now residing thereon, and as said wife may claim some marital rights in and to the real and personal property. The defendant excepted to the amendment because it permitted the bill to be amended into a cause of action against her when it failed to state a cause of action in the first instance. It is no fatal objection to an amendment that it may enable a plaintiff to recover when he otherwise cannot. Every necessary amendment does this. *Skinner* v. *Grant,* 12 Vt 456, 462.

Defendant further objected to the amendment because it failed to meet the objections about the allegations of the bill relative to the acts charged against her. These allegations may be treated as surplusage, as it was unnecessary to charge any misconduct upon her part. The situation is like that of the foreclosure of a purchase price mortgage securing a note of the husband, where the wife is made a party defendant in order to foreclose her homestead right. The amendment was allowable in the discretion of the chancellor. For failure to answer over the bill was properly taken as confessed as to this defendant. No error appears.

*Decree affirmed and cause remanded. Let the bill be so amended in the court of chancery as to conform to the findings of the chancellor relative to the expense of the plaintiff's board, and let a new decree be entered like the one excepted to fixing a new date for compliance therewith, and providing that the defendant Clayton H. Hoadley shall pay the necessary doctor's bills from the date of the decree excepted to, March 6, 1944, until the plaintiff shall be restored to the possession of her home.*

UPON MOTION FOR REARGUMENT.

SHERBURNE, J. The defendant Clayton H. Hoadley has filed a motion for reargument on the ground that we have failed to con-

sider certain material propositions upon certain of his exceptions. The sole matter referred to in the motion is the statement made by the chancellor in reply to a remark of defendant's attorney during the cross-examination of the defendant, and which we noted in the opinion, that the defendant claims indicates that the chancellor had prejudged the matter relative to the locking of the door.

No exception was taken to this statement, which was made toward the close of the trial, and the taking of evidence proceeded without objection on the part of the defendant. If the defendant thought that the statement indicated that the chancellor had prejudged the case as he now claims, he should have then excepted or made an appropriate motion, and not have allowed the trial to proceed without objection. For failure to do so he waived it. *Leonard* v. *Willcox,* 101 Vt 195, 202, 142 A 762. This case cites *Crosby* v. *Blanchard,* 7 Allen (Mass.) 385, a case where the lower court denied a motion for a new trial and the defendant excepted. The principle stated is applicable here. We quote: "If there was any valid objection to the impartiality of the judge, by reason of the conversation between him and the counsel for the plaintiff, which would have rendered it irregular or improper for him to proceed with the trial, such objection was waived by the course pursued at the trial by the counsel for the defendants. He knew all the facts on which the motion for a new trial is founded before the case was argued, and elected, notwithstanding such knowledge, to go on and finish the trial. Having thus taken his chance for obtaining a verdict, he cannot, now that he finds it is against his clients, avail himself of the facts previously within his knowledge to get rid of it." The same principle is illustrated in many of our cases, a recent one being *Barber* v. *Stratton,* 111 Vt 43, 48, 10 A2d 211.

This rule applies in equity and court trials as well as in jury trials. The defendant having waived the point by failing to except at the trial it is not available in support of exceptions to the findings or decree.

We have again examined the transcript, and, as stated in the opinion, are unable to find that the chancellor over-stepped in this regard, and do not find that his statement indicates that he had prejudged the case, but, as it was not excepted to, there is no sufficient reason for us to prolong this opinion further.

*Motion for reargument denied. Let full entry go down.*