Hillsborough, Feb. 2, 1943. } No. 3351.

HELEN WALSH *v.* PUBLIC SERVICE CO. OF NEW HAMPSHIRE.

SAME *v.* ALEXANDER YAROMA.

*McLane, Davis & Carleton, William G. McCarthy* and *Robert P. Bingham* (*Mr. Bingham* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the defendant company.

*Sewall, Varney & Hartnett* (*Mr. Hartnett* orally), for the defendant Yaroma.

PAGE, J.   The plaintiff, a passenger on the defendant company's north-bound street car, signalled for a stop at Elm and Concord Streets in Manchester.   The motorman stopped the car and opened the door some distance south of the intersection of the streets.   The distance was in dispute.   The motorman claimed that an automobile standing ahead of him compelled the stop at that place, but the plaintiff claimed that it was an improper and unsafe place to discharge passengers.

The plaintiff alighted and took two or three steps forward easterly in the direction of the sidewalk.   She then saw the defendant Yaroma's automobile, north-bound and nearly upon her.   In fright she

drew back hurriedly, and, as she testified, bumped her head on the street car, suffering the injuries complained of. As to when and how many times, if at all, she looked for approaching automobiles prior to the moment of fright, she alone testified, and in a confused and self-contradictory manner. While it is possible that she could not be found contributorily negligent as a matter of law, her testimony discloses the amplest evidence upon which she could be found causally negligent as a matter of fact. Her counsel have wisely waived the exception to the denial of their motions to set the verdict aside, but seek a new trial on the grounds of other alleged errors.

The plaintiff excepted to an instruction to the jury that there was "no issue in this case of any unreasonable or excessive speed on the part of Mr. Yaroma." The plaintiff's opening statement made no claim of excessive speed, and no such claim was made until late in the final argument of her counsel. Even then the claim was a limited one; the speed was said to be slightly excessive only as bearing on the failure of Yaroma to swerve to his right, or on his failure to bring his automobile to a full stop until he was within two or three feet of the plaintiff, frightening her and causing her to draw back and bump her head. The issue as to the nearness of Yaroma's approach to the plaintiff was submitted to the jury by the court, after it had been extensively tried and argued. It is hardly probable that the jury were misled.

But whether or not this is so, there was no evidence of excessive speed. Four claims of such speed were briefed. All have been examined with care. Each contains elements of conjecture that renders it valueless. (1) The motorman heard Yaroma's car make a sound like one at excessive speed, but had no idea what the speed was and no judgment about it. The only evidence to take the matter out of conjecture was Yaroma's testimony that, after stopping in the rear of the street car, he started up again and was driving in low gear. (2) Yaroma's failure to swerve to the right is argued as proof of excessive speed. This is purely speculative, as the failure might have been due to any of several causes unless all but one is eliminated, or there is independent evidence of the one. (3) The plaintiff makes a computation of elapsed time, but it is based upon a supposition of the plaintiff's own speed, of which there is no evidence. (4) It is a findable fact that Yaroma did not bring his car to a stop until he reached the intersection of the streets. The claim that he was, therefore, going at an excessive speed is conjectural. A stop at any given point is perfectly consistent with a slow speed

unless there is proof of brake marks or other independent evidence here lacking. Moreover, the only claim the plaintiff's counsel ever made to the jury regarding speed was that if Yaroma had not been driving quite so fast ("a little more slowly") he would have stopped before he came within two or three feet of the plaintiff. There was no error in taking the issue of speed from the jury.

The plaintiff excepted to the denial of her request that the court charge that Yaroma had the duty of stopping in accordance with the provisions of a supposed ordinance of the city of Manchester which it is alleged requires a driver approaching a street railway car, when passengers are alighting or embarking, to come to a full stop before reaching the door of the street car. The court charged instead in accordance with P. L., c. 103, s. 12, that in such cases the driver had the duty to slow his vehicle, and, if necessary for the safety of the public, to bring it to a full stop.

It does not appear that the supposed ordinance was proved or offered for proof. The fact of the claimed law is wholly an evidentiary matter. Whether it exists is the first question. If that is answered in the affirmative, the second question arises of its construction, and that is a question of law. Both questions are for the court, but if the first question of fact is not found, the second question cannot arise. While the court may in discretion search the law books for the answer to the question of the fact of foreign law, that method is not compulsory, but only alternative to proof offered by the party. *Saloshin* v. *Houle*, 85 N. H. 126.

The proposition that courts "do not officially take notice of the ordinances of cities" (*Danovan* v. *Jones*, 36 N. H. 246, 248) appears to be consistent with the *Saloshin* case, since such ordinances, usually not readily available to the court, may properly be treated like foreign law, of which the court may or may not take judicial notice as convenience and expediency suggest. If unacquainted with the fact, the court may refuse to take judicial notice until "the party calling upon him to take such notice produces satisfactory proof," as by reference to the claimed ordinance in authorized printed form. *Hall* v. *Brown*, 58 N. H. 93, 95. If such proof be wanting, as appears to be the case here, the court is under no compulsion to recognize, interpret and apply the ordinance. No occasion appears for this court to ascertain the ordinance and consider whether it is valid.

Arguing that the defendant company permitted the plaintiff to alight in a reasonably safe place, counsel said: "Were there any dan-

gers there existing at that time? Taking her evidence that she had gone about three feet from the street car, I argue to you that was a safe place to leave her. She on her own testimony saw the approaching automobile and she voluntarily stepped further into the street after she saw it. Didn't she then and there, after she had alighted in a safe place, didn't she then and there assume responsibility for her own conduct? Having seen the automobile and having chosen to walk toward the sidewalk when it was approaching, should the operator of the street car, should the defendant Public Service Company be chargeable with having left her in an unsafe place, *when from her own evidence it was safe when she stepped to the ground*, and from her own evidence she . . . [the italicized words were here excepted to] . . . Gentlemen, you will recall her testimony. You will recall that she testified she stepped to the ground and saw the car from a distance." The argument was a proper inference from the plaintiff's own testimony that she alighted, saw the car coming, voluntarily left the place where she alighted, after moving found herself in a place of danger, then hurriedly drew back to a place about the same as where she had alighted, where the Yaroma car did not hit her, though she said it brushed her clothes.

Counsel for Yaroma, in argument referring to the plaintiff's testimony, said: "Was she evasive? . . . did we get the true picture of the accident? And bear in mind that you must believe the plaintiff or she can't collect a cent. She is the only witness, and you must believe her statement. [Exception to the argument that she was the only witness.] She knew what happened. I think you will understand what my argument is on the subject. She comes into court with a claim. I am not talking about distances and getting them exact. I am talking about the substance of the claim, whether she went out, whether her head was struck. If you don't believe the plaintiff, or if you believe that her evidence is too confused, you can't find for the plaintiff." Here the court interpolated, "Of course, the jury understands that she presented other evidence besides her own." Counsel continued: "I assume they do. We all heard the other evidence. My own client was on the stand and gave evidence which may be argued by Mr. Graf. I do not say that is not evidence in the plaintiff's case, but I do say on the substance of the important matters as to what she did and what she expected, unless you believe the plaintiff, she cannot recover."

The argument was directed to "what she expected," "whether her head was struck," and "what she did." As to the first two she was

strictly the sole witness. If the jury disbelieved her testimony, there was no accident by the bumping of her head, and her disregarded statement as to what she expected would arguably leave her charged with contributory negligence. In neither case could she recover. As to "what she did" it is clear that the argument did not forbid the jury to consider what other witnesses said about her motions. The only other witness to "what she did" was Yaroma himself, and he said precisely what she said, that she walked ahead, then drew back. It is beyond reason to suppose that the jury understood that they were asked by counsel for Yaroma to disregard what she said, with this corroboration, so favorable to the defendants' contention. Nor is it easy to understand why the plaintiff should object to its being disregarded. No prejudice can be found.

The plaintiff excepted to the denial of the following requests for instructions: "4. Mrs. Walsh did not need to anticipate that either the operator of the street car or the driver of the automobile would fail to use due care. 5. A person crossing the street on foot is justified in acting on the assumption that another person approaching her with a motor vehicle will act in accordance with the rights and duties of both." The court charged instead that "The plaintiff and both defendants had the right to the reasonable use of the highway. Each was entitled to expect that the other would use reasonable care under the circumstances, and each was under the duty to the others to exercise care under the circumstances." There was no exception to the instruction given and no request for its elaboration. It covered the substance of the requests.

The plaintiff now says that the fifth request called the court's attention to the principle announced in *McCarthy* v. *Souther*, 83 N. H. 29, that a pedestrian crossing the street has no duty to be watchful for the impact of a motor car when no impact is reasonably to be anticipated, while the driver of the car must use due care in watching for the presence of a pedestrian. We can see in the requests nothing to notify the court that instructions were desired concerning the comparative duties of watchfulness on the part of the plaintiff and Yaroma. In fact, no definition of Yaroma's duty was sought. The plaintiff asked for a particular limitation of the scope of her own duty, and she got it in substance. The *Souther* case is authority for the proposition that where the matter desired to be charged has not been brought clearly to the attention of the trial justice, the requesting party is "estopped from subsequently claiming unfairness of the trial."

Since the plaintiff's unwaived exceptions bearing on liability have all been decided against her, it is conceded that we have no occasion to examine her exceptions bearing on damages. Nor is there reason to consider exceptions waived by failure to brief or argue them.

*Judgments for the defendants.*

All concurred.