## Raymond G. Thompson et al v. Lionel H. Smith et al.

[129 A2d 638]

Special Term at Rutland, November, 1956.

Present: **Jeffords, C. J., Cleary, Adams, Hulburd and Holden, JJ.**

Opinion Filed February 7, 1957.

490

*Richard W. Foss* for the plaintiff.

*Jacob Kaplan* for the defendant.

**Holden, J.** By a complaint to the court of chancery for Chittenden County, the plaintiffs asked that court to enjoin the construction of a motel by the defendants in the Town of

South Burlington. The effort of the plaintiffs to invoke equitable relief is founded on the provisions of the protective zoning ordinance of the Town of South Burlington, dated June 7, 1947 as amended March 1, 1952. The chancellor's findings and reasonable inferences to be drawn therefrom establish these factors to the final decree that followed.

The plaintiffs Thompson are husband and wife and own certain land which they have long occupied as a homestead, situated on the north side of Bacon Street in the Town of South Burlington. Adjacent and to the west of the plaintiffs' home is a corner lot of the defendants Smith, situated on the easterly side of Shelburne Road at its intersection with Bacon Street. On July 6, 1954, acting under the protective zoning ordinance referred to above, which we refer to as the ordinance, the defendants made application to the board of adjustment for a permit to erect a motel at the corner of Shelburne Road and Bacon Street. This application represented that the motel sought to be erected was to be at all points, no less than twenty-five feet from the property line of the plaintiffs. The application was heard at a public hearing July 19, 1954. The plaintiffs appeared along with some twenty-five objectors at this meeting. Details of the construction plan proposed by the application were explained at this hearing by the zoning administrative officer, one D'Acuti. The explanation and diagram of the proposed motel confirmed the statement of the application that the construction would clear the plaintiffs' west property line by twenty-five feet. This application, affording such twenty-five foot clearance, was approved by the board on the day of the hearing. The application thus approved became the building permit for the motel construction.

The plan as proposed on July 19 was not further pursued by the defendants. On August 7, 1954 the defendants applied for leave to reduce the distance intervening between the east wall of the motel and the plaintiffs' west property line from twenty-five to ten feet. The zoning administrator, D'Acuti, then called three members of the board and obtained their verbal approval to the reduction in the line limit requested by the defendants. The zoning administrative officer then endorsed on the permit of July 19 the reduction of the limit to ten

feet. The board was not called into session to discuss or act on this reduction. No notice of the revision was afforded to the plaintiffs nor to any of the objectors who appeared at the public hearing of July 19, 1954. The minutes of the meetings of the board of adjustments do not recite or make reference to the reduction in the distance requirements of the original permit granted July 19.

On or about November 11, 1954 the defendants commenced construction of the motel and accomplished the building of the easterly wall of the motel a distance from ten feet to ten feet, four inches, from the defendant's west line and approximately twelve feet from the western limits of the plaintiffs' dwelling house.

The plaintiffs complained to the zoning administrative officer, D'Acuti, and to his successor in office concerning the construction, but the building was completed prior to the time the plaintiffs brought their bill of complaint to the court of equity. No appeal was taken from the action of the board or the administrative officer to the attempted revision of the July 19 permit.

The chancellor found that the value of the plaintiffs' property before the motel was constructed was $14,800 and its value following the erection of the motel was $11,100. He further found the plaintiffs sustained pecuniary damage to their real property in the amount of $3,700.

At the hearing of the cause, the defendants challenged the validity, force and effect of the ordinance. In his report the chancellor determined that the site of the motel is within an area zoned as "residential" by the ordinance. The ordinance provides for zoning regulations and procedure incident to carrying out such regulations. Included in its provision is: "Sec. 17. Board of Adjustment. The board of selectmen shall appoint a board of adjustment of five [5] which shall act on all matters within its jurisdiction under this ordinance in the manner prescribed in Chapter 153 of the Public Laws of the State of Vermont.

"The board of adjustment shall be subject always to the rule that it shall give due consideration to promoting the public health, safety, convenience and welfare of the inhabitants of

the Town of South Burlington, encouraging the more appropriate use of land and protecting and conserving property value, that it shall permit no building or use injurious, noxious, offensive, or detrimental to a neighborhood and that it shall prescribe appropriate conditions and safeguards in each case.

"The duties shall be as follows:

1. To hear and decide special exceptions and to authorize upon appeal in specific cases such variances from the terms of this ordinance as will not be contrary to the public interest.

2. To adapt the requirements of the ordinance to regular, narrow, or shallow lots and to lot lines, provided that the spirit and intent of this ordinance with regard to uses is preserved."

An additional provision of the ordinance is set forth in Finding 16: "This Ordinance shall take effect upon acceptance by the Town of South Burlington and its approval by the Attorney General and publication according to law." The chancellor further determined that after proper warning and publication the ordinance was "properly submitted to the voters on a printed ballot June 7, 1947 at a special town meeting, and approved on that date. This protective zoning ordinance was recorded after its passage in Vol. 18 p. 292 of the land records of the Town of South Burlington—and was on record when the original application was submitted."

The vehicle by which the approval of the voters was registered was a printed ballot which propounded the question thus: "Shall the ordinance entitled protective zoning ordinance for the purpose of promoting health, safety, and general welfare of the Town of South Burlington by establishing Municipal Zoning Districts, rules and regulations and providing for administration and enforcement thereof under provision of Chapter 153 of the Public Laws of Vermont be approved and adopted."

On March 1, 1952 the selectmen of the Town of South Burlington amended the ordinance of June 7, 1947 by enacting certain amendments which included the following:

"1. The zoning ordinance is amended to provide that the erection of Motels and Hotels in a residential area shall be allowed only after a public hearing by the Board of Adjustment.

3. The ordinance is amended to provide that the side and rear area requirements for motels, apartment houses and hotels in areas shall be as follows:

> Side area limit shall be twenty-five feet from the property side and rear lines in residential areas. Side area limits shall be ten feet from the property side and rear lines in other areas.

6. The ordinance is further amended to provide that the limit to be maintained from the rear line of lots that have a frontage on one street and a side line on another shall be ten feet from that rear line."

The findings are concluded by paragraph 24 that contains the following statement: "It is found that the affirmative action of the voters taken at the special town meeting of the Town of South Burlington on June 7, 1947 on said Protective Zoning Ordinance was conditional, that is, to become effective if and when approved by the Attorney General of the State of Vermont. Such approval was never obtained." To the findings thus made, the plaintiffs excepted in this language: "The plaintiffs except to Finding No. 24 on the ground that said finding as made is not a proper finding of fact, but is merely a conclusion of law and as such is not warranted by the evidence in the case." The plaintiffs also took and were allowed a general exception to the final decree.

This appeal at the outset is attacked by the defendant appellees on technical grounds that introduce procedural complexities which the defendants assert protect the result below from review by this Court.

The defendants contend that Finding No. 24 is not a conclusion of law but is merely a recital of facts. This is not so. It contains one of the conditions precedent to the taking effect of the ordinance as set forth in Finding No. 16 and that this

condition, i. e., approved by the Attorney General had never been obtained as stated in Finding No. 17.

There was no need for the chancellor to restate these findings unless for some purpose. The clear and obvious purpose was to have the ultimate finding state a conclusion of law to the effect that the approval of the Attorney General was a valid condition and since it had not been obtained the ordinance never went into effect. The decree entered was clearly based on this conclusion.

■ Further, the duty and responsibility of determining the meaning of the ordinance applicable to cases before the court is a judicial function. "Hence it is a fundamental rule that the construction of an ordinance is a question of law for the Court, and not a question of fact for a jury or the Court sitting without a jury." 6 McQuillin, Municipal Corporations, Sec. 20.40 at page 100. *Wilson* v. *New York, New Haven and Hartford Railroad*, 18 RI 598, 29 A 300, 301; *Walsh* v. *Public Service Co. of N. H.*, 92 NH 331, 30 A2d 494, 496.

■ The defendants advocate that even if Finding 24 be regarded as a legal conclusion, the ground of the plaintiffs' exception that it is not warranted by the evidence is insufficient to bring the soundness of the legal conclusion before us for review. It is the defendants' further contention that the argument of the plaintiffs' brief, that the vote of the town was conditional on approval by the Attorney General was an error of law, constitutes briefing on a ground not stated by their exception to Finding 24. The plaintiffs' exception to the finding was inartfully drawn, yet it is premised on the ground that No. 24 "is not a proper finding of fact, but is merely a legal conclusion * *." In making findings, it is the duty of the trier to sift the evidence and state the facts. *Hammond's, Inc.* v. *Flanders*, 109 Vt. 78, 81, 191 A 925; *Petition of New England Tel. & Tel. Co.*, 115 Vt 494, 498, 66 A2d 135. There is no duty to report conclusions of law on the facts found. *Deavitt* v. *Hooker*, 73 Vt 143, 148, 50 A 800. If a conclusion of law is stated, no error can be predicated upon it if the conclusion is sustained by the facts previously found. *Schwartz* v. *Avery*, 113 Vt 175, 180, 31 A2d 916. But if the conclusion is inconsistent with the

facts found that underly such conclusion, it cannot stand. *Abatiell* v. *Morse*, 115 Vt 254, 259, 56 A2d 464. The plaintiffs' exception to Finding 24 on the ground that it states a legal conclusion is in effect, if not in form, the same as if taken to a judgment on the facts found where the question is whether the findings are such as to support the judgment as a matter of law. *Schwartz* v. *Avery, supra,* at 180; *Abatiell* v. *Morse, supra.* And even though the plaintiffs did not except to the finding on the ground that it was not supported by the previous findings, we may so treat it to determine if that finding supports the final result reached by the decree. *Smead* v. *Sutherland*, 118 Vt 361, 362, 368, 111 A2d 335. Since the legal effect of the conclusion is subject to review by the exception to Finding 24, the appellate court must determine whether the legal conclusion is the correct result of the facts upon which it is founded. *Merchants Mutual Casualty Co.* v. *Izor*, 118 Vt 440, 443, 111 A 2d 732. The very purpose of the appeal is to ascertain whether the law applied has sound footing on the facts found to support it; in other words, to resolve the question whether the conclusion is correct or erroneous, as a matter of law. *Spaulding* v. *City of Rutland*, 110 Vt 186, 195, 3 A2d 556. This was the scope of the exception preserved. The brief of the appellants, seeking to point up the error of the conclusion as a matter of law does not stand on a ground not raised below. It is within the framework of the exception. It advocates that the law applied is not sound. This was its proper office.

▉ Lastly, the defendants challenge the plaintiffs' exception to Finding 24 on the ground that if the finding states a legal conclusion, it is mixed with fact, and we are bound by statements in the findings involving mixed questions of law and fact to the extent that judicial review of the statement is foreclosed. *McClary* v. *Hubbard*, 97 Vt 222, 122 A 469, is offered as authority for this result. This advocacy attributes to that decision a force not easily read or found in the language of the opinion. And if that be the doctrine of that case, it has long since been eroded by the repeated and subsequent consideration by this Court of findings that incorporate mixed questions of law and fact. *Smith* v. *Vermont Marble Co.*, 99 Vt 384, 395-396, 133

A 355; *Springfield* v. *Newton*, 115 Vt 39, 47, 50 A2d 605. See also *Rothfarb* v. *Camp Awanee, Inc.*, 116 Vt 172, 176, 71 A2d 569; *Merchants Mutual Casualty Co.* v. *Izor, supra*, at 443.

We hold that the exception to Finding 24 is sufficient to confront us with decision of the question: Was there a valid protective zoning ordinance in effect in South Burlington that governed the construction of the subject motel by the defendants?

■ If the resolution of that question is in the negative it will conclude the merits of the appeal. Should the question be resolved in the affirmative with the result that there was a valid zoning ordinance then in force, the general exception to the decree preserves for review the question whether the decree is supported by the various findings made and the pleadings. *Abel's, Inc.* v. *Newton*, 116 Vt. 272, 274, 74 A2d 481; *Vermont Motor Co.* v. *Monk*, 116 Vt. 309, 311, 75 A2d 671. If a valid ordinance then obtained, exception to the decree requires adjudication on whether the facts as found establish compliance with such zoning ordinance and the statutory enabling act upon which the ordinance was predicated.

Each question propounded by the exception to finding number 24 and to the decree has been specifically briefed and argued at length by both sides of this controversy.

Thus presented with the merits of this appeal, we shall proceed to test the soundness of the conclusion stated in Finding 24.

■ The Town of South Burlington in common with all other cities and towns in the State was created for the purpose of performing such governmental functions as the state might devolve upon that municipality. *Burlington* v. *Central Vermont Railway Co.*, 82 Vt 5, 9, 71 A 826. While it can receive and translate powers properly delegated to it, its sovereignty is restricted to specific governmental functions confided to it by the legislature. 37 Am Jur, Municipal Corporations, Sec. 118 at 732; *Commonwealth* v. *Maletsky*, 203 Mass 241, 89 NE 245, 247, 24 LRANS 1168. The power of a municipality to accomplish zoning exists by virtue of authority delegated from the State, 8 McQuillin, Mun. Corp., Sec. 25.35, p. 64;

*Dal Maso* v. *County Commissioners*, 182 Md. 200, 206, 34 A2d 464, 467.

The town could inaugurate municipal zoning only by pursuing correctly the authority conferred upon it by the enabling provision of Chapter 173 of the Vermont Statutes, Revision of 1947. This chapter defines "legislative body" of a municipality to include the board of selectmen of a town. Section 3848 provides:—"For the purpose of promoting the health, safety, or general welfare of the community, the legislative body of any municipality, if so authorized by the voters, may regulate and restrict the size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

Section 3849—"The qualified voters of a municipality may vote to give such authority to such legislative body, but no regulations or restrictions made by such legislative body in pursuance of such authority shall become of force and effect until the same are approved by the legal voters of such town in town meeting. When the legislative body of any town first adopts zoning regulations and restrictions under the provisions of the preceding section and divides the town into districts under the provisions of section 3851, if the legislative body of such town establishes districts, and passes an ordinance containing all of such zoning regulations and restrictions, including such districts, if established, and such regulations and restrictions are to be thereafter submitted to the legal voters for their approval as herein provided, at a meeting thereof in such town, and when the vote is required by law to be by ballot under the Australian system at such meeting, a printed copy of such ordinance shall be posted in some public place in each polling district in such town and such ordinance shall be published in full in some newspaper of general circulation in such town at least thirty days before the date of such town meeting. It shall be sufficient to submit all such regulations and restrictions, including the division of the town into districts, to the voters at such meeting under an article in the warning for the meeting and on a printed ballot which calls

only for the approval or disapproval of such ordinance, describing the same by title only, stating the date when it was passed, when and in what newspaper it was published, where a copy of the same is posted, and for the approval or disapproval of all the regulations, restrictions and provisions of such ordinance, without further describing or specifying such restrictions or provisions.''

By force of these provisions, the state delegated to the legal voters authority to grant or withhold from the selectmen as the legislative body of the town the power to make regulations and restrictions to accomplish zoning.

By V. S. 47, §3849 such zoning regulations cannot become of ''force and effect'' in the municipality until they ''are approved by the legal voters of such town in town meeting.'' Thus, the State has decreed that the imposition of zoning regulations shall be accomplished, 1. when the selectmen are authorized by the voters to propose regulations in accordance with the comprehensive plan, 2. the selectmen have prepared and adopted such a plan pursuant to the statutory procedure required, and 3. upon proper warning the regulations designed to execute the plan are approved by the legal voters of the town at town meeting.

In adopting the ordinance of July 7, 1947, the selectmen fulfilled the mandate of the statute by proposing the zoning plan and regulations. In addition to the regulatary provisions of the ordinance, the selectmen sought to impose the further additional requirement that the ordinance should take effect upon its approval by the attorney general. So much of the enacting clause that states the ordinance shall take effect ''upon the acceptance by the town of South Burlington * * and publication according to law'' merely recites the mandate of the statutes. But that provision relating to approval by the attorney general exceeded the limits of the statute. It is clear that this requirement, if validly interjected, would have the effect of redelegating power entrusted to the voters of the municipality to a third person who was a stranger to the town, disconnected in any official way with the municipality involved. By conditioning the regulations upon his approval, the ultimate de-

cision of affirmance or rejection of the regulations by the selectmen is removed from the very agency to whom it was entrusted by the enabling act. Such meandering by the selectmen of the town transcends the expressed limits of the power delegated from the State. It contravenes the deep-rooted principle of law that the delegate of power from the sovereign cannot without permission recommit to another agent or agency the trust imposed upon its judgment and discretion. *In Re Municipal Charters*, 86 Vt 562, 86 A 307. It violates a principle that is fundamental and of universal application. *Clark* v. *City of Washington*, 12 Wheat. 40, 54, 25 US 40, 6 LEd, 544, 549; *Attorney General* v. *Lowell*, 67 NH 198, 38 A 270, 271. The Town of South Burlington in exercising power conferred by the legislature is subject to the same general principles concerning the delegation of power that control the state legislature itself. 11 Am Jur, Const. Law Sec. 224, p. 937; *People ex rel Lockwood & Strickland Co.* v. *Grand Trunk & Western Railway*, 232 Ill 292, 83 NE 839, 842; *City of Chicago* v. *Stratton*, 162 Ill 494, 44 NE 853, 854, 35 LRA 84.

What legal consequence attaches to the extra-statutory contingency interposed by the selectmen? No case exactly in point has been uncovered. Some analogy, however, is found in that line of cases where legislative enactment is made contingent on a referendum to the electorate.

The law of Vermont is established that the legislature may make the effective date of its legislation be determined by the vote of the people of the state at large. Our commitment to this view is found in *State* v. *Parker*, 26 Vt 357, and confirmed in *State* v. *Scampini*, 77 Vt 92, 97-98, 59 A 201.

The decision in *State* v. *Parker, supra,* affirmed a conviction prosecuted under a statute of 1852 wherein it was enacted that the statute should come in force on the second Tuesday of March, 1852; with the proviso, however, that meetings of the freemen of the state should be held on the second Tuesday of February, 1853 to vote upon "their judgment in choice in regard to this act, and if a majority of the ballots cast shall be 'no' then this act shall take effect in December, 1853." The vote was in the affirmative. The offense prosecuted

occurred prior to 1853. The Court, in an opinion by its Chief Justice Redfield, defends and approves the quality of this contingency by saying at page 365: "If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, it makes no essential difference what·is the nature of the contingency, so it be an equal and fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one. And to us the contingency upon which the present statute was to be suspended, until another legislature should meet and have an opportunity to reconsider it, was not only proper and legal, and just and moral, but highly commendable and creditable to the legislature who passed the statute; for, at the very threshhold of inquiry into the expediency of such a law, lies the other and more important inquiry, are the people prepared for such a law? Can it be successfully enforced? These questions being answered in the affirmative, he must be a bold man who would even vote against the law; and something more must he be who would, after it had been passed with that assurance, be willing to embarrass its operation, or rejoice at its defeat." Subject the contingency of the approval of the attorney general to scrutiny under the light of the precept of *State* v. *Parker*. The very review by the vote of the people upon the expediency of the law and the question "Are the people prepared for such a law?" could be defeated by reference to an unauthorized individual, thereby subjecting the express will of the voters of the town on these very propositions to the unjust condition that it might be entirely ignored or defeated at the sanction of a stranger. By force of that effect the contingency is arbitrary, illegal and unfair. It opposes sound public policy for it violates the trust incident to powers delegated, and departs from the limits of the grant from the state to permit the authority conferred, to travel unbridled, vesting the decision as to the expediency of the proposed regulations to a single state official. *State* v. *Parker* holds that the time when a legislative act becomes effective may depend on the happening of a just and legal contingency. The contingency sought to be interposed by the selectmen in the ordinance before us is not such a contingency

for it transcends the express provisions of the enabling act and violates a trust confided solely to the voters of the town and their lawfully constituted representatives. It can have no stature or effect and is a nullity. See *Santo* v. *State,* 2 Iowa 165, 187.

The object and purpose of the statutory enabling act is to promote the health, safety and general welfare of the local subdivisions of the state by zoning, at the election of the voters of the respective municipalities and within the prescribed framework of their local government. The attorney general of the State is outside that framework.

■ The defendants, in their brief, in substance admit the condition sought to be imposed was invalid, but advocate that the ordinance itself is thereby destroyed. The partial invalidity of a legislative enactment does not confer authority on the courts to declare the entire enactment void unless all the provisions are connected in subject matter, depending on each other, operating together in meaning to render it incapable of severance without complete destruction of the whole. "If the invalid portion can be eliminated and that which remains be complete in itself and capable of being executed in accordance with the apparent intent of the Legislature wholly independent of the eliminated portion it must be sustained." *Sargent* v. *Rutland Railroad Co.,* 86 Vt 328, 338, 85 A 654, 658. To the same effect are *State* v. *Paige,* 78 Vt 286, 289, 290, 62 A 1017; *State* v. *Abraham,* 78 Vt 53, 56, 61 A 766; *State* v. *Scampini,* 77 Vt at 122, 59 A at 211.

■ The same rule of severability logically applies to ordinances partially invalid. The rule has been followed in many jurisdictions. 6 McQuillin, Municipal Corporations, Section 20.67, p. 162. An illegal and unjustified effort to confer an unlimited discretion on a zoning administrative official was held not to destroy the full ordinance. *Jack Lewis, Inc.* v. *Mayor of Baltimore,* 164 Md 146, 164 A 220, 221, 223, and a void provision in an ordinance as to the time of its taking effect does not invalidate the entire ordinance, *Sanders* v. *Starkville,* 128 Miss 742, 91 So 422.

■ In the ordinance before us the legislative act of the municipality in relation to its effort to accomplish zoning was completed before the time set for fulfillment of the illegal condition. Each and every statutory prerequisite of the enactment of the protective zoning ordinance had been accomplished to give the ordinance the force of law under Chapter 173. The selectmen provided for the necessary regulations to accomplish a municipal zoning of the town by force of V. S. 47, §3849. These regulations when adopted by the selectmen were inchoate merely. They were transformed into law when approval was expressed by vote of the town meeting. The illegal condition itself did not induce the legislative body to make the regulations, for the regulations were already made and preceded the contemplated approval by the attorney general. The advisory approval by the attorney general, perhaps, was desirable from their point of view because it would afford comfort and assurance to their legislative acts, but it could not afford them legal sanction. Did the condition induce the action of the voters on the question of whether they would accept the regulations submitted? We think the answer must be made in the negative. The question submitted to them was in substance, shall the ordinance establishing Municipal Zoning Districts, rules and regulations and providing for administration enforcement "under provisions of Chapter 153 of the Public Laws of Vermont [Chapter 173 V. S. 47] be approved and adopted?" To this question the voters answered yes. The printed ballot, by which their vote was recorded, is silent on the purported requirement of approval by any agent or agency other than the electorate itself. No room was available for their expression of choice concerning the unlawful contingency imposed, and even if they searched the posted ordinance at the various public places where it was proclaimed, and disapproved the subjugation of their vote to the approval of a third person, they could not record their rejection of that provision without disapproving the entire regulations proposed. To hold that the incident of inclusion of the illegal condition by the selectmen persuaded the voters to an affirmative vote tortures both reality and the popular will. The voters themselves did not affirmatively declare that the vote was to be conditioned upon

the attorney general's approval. If the authors of the regulation by their ordinances undertook to say this for them they were without authority to so speak. They were bound to submit the regulations to the town meeting as the statute directed. See *State of Utah ex rel. Utah Savings and Trust Co.* v. *Salt Lake City*, 35 Utah 25, 99 P 255, 259; *Hamilton* v. *Village of Detroit*, 83 Minn 119, 85 NW 933, 934.

The protective zoning ordinance became the law of the town when the zoning regulations of the selectmen were approved by the vote of the town meeting. This is the plain provision of the statute.

The conclusion of the chancellor expressed in finding 24 that the affirmative action of the voters at special town meeting on June 7, 1947 was "conditional, that is, to become effective if and when approved by the attorney general of the state of Vermont" is not supported by the previous findings upon which it is laid and thereby constitutes an error of law.

On May 6, 1955, the General Assembly enacted No. 341 of the Acts of 1955. This act provides: "Section 1. Regulations of the Town of South Burlington relating to municipal zoning, adopted by the voters thereof at town meeting held on June 7, 1947 and amendments thereto are hereby ratified and declared legal. Section 2. This act shall take effect from its passage."

The defendants submit the argument that this special statute "is a legislative recognition that, until 1955, the regulations contained in the ordinance had not gone into effect." They further contend that the legislature must have intended some change in the law and reason that if there was a valid zoning ordinance in effect, No. 341 of the Acts of 1955 would have been unnecessary.

We cannot say that No. 341 of the Acts of 1955 is a legislative recognition that no valid ordinance was in effect in South Burlington on May 6, 1955, for such a contention attributes to the Legislature the undertaking to construe and declare the effect of the ordinance. Such an undertaking is a judicial function which we cannot assume the Legislature sought to remove from the judiciary. *Trybulski* v. *Bellows Falls Hydroelectric Corp.*, 112 Vt 1, 10, 20 A2d 117. We can presume

the Legislature acted with full knowledge of the ordinance. *Scott* v. *St. Johnsbury Academy*, 86 Vt 172, 175, 84 A 567. However, the only legislative intent that can be inferred from No. 341 of the Acts of 1955 is the effort to cure, delete and render innocuous whatever legal infirmities that might have attended the enactment of the ordinance.

We conclude, independent of curative legislation, that the zoning ordinance was in effect in the Town of South Burlington November 11, 1954, when the defendants commenced construction of the subject motel. It remains for decision whether the construction was accomplished pursuant to the directive of the ordinance and the underlying statutory law upon which the ordinance is founded.

The findings of the chancellor establish that the defendants' motel is located in a residential area of South Burlington as defined by the ordinance. The ordinance as amended prescribed side and rear area requiremets for motels to be twenty-five feet in residential areas. The court ascertained that on July 19, 1954, after a public hearing, a permit was granted and issued by the board of adjustment to the defendants to construct the motel in conformity with the application. Both the application, and the permit issued thereon, observed the requirement of twenty-five feet clearance from the plaintiffs' lateral line.

Thereafter on August 7, 1954 the defendants applied for leave to reduce the distance and thereby sought an exception from the requirement of the ordinance to enable construction within ten feet of the plaintiffs' lateral and westerly line.

V. S. 47, §3866-II vests in the board of adjustment the power "to hear and decide special exceptions to the terms of the ordinance * * *." therefore the defendants application was addressed to the proper tribunal. When the defendants invoked the decision of the board of adjustment by their request for permission to have a variance from the ordinance, the defendants and the board both became bound to adhere to the procedure established by the municipal zoning act as it appears in Chapter 173. V. S. 47, §3860 of this chapter provides: "*Board of Adjustment; exceptions.* Such legislative bodies shall provide for

the appointment of a board of adjustment, and in regulations and restrictions adopted pursuant to the authority hereof, shall provide in appropriate cases and subject to appropriate conditions and safeguards that the board may make special exception to the terms of the ordinances in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."

V. S. 47, §3862 provides: "*Same. procedure.* The board shall adopt rules in accordance with the provisions of the ordinance. Meetings of the board shall be held at the call of the chairman and at such other times as the board may determine. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses. All meetings of the board shall be open to the public. The board shall keep minutes of its proceedings showing the vote of each member upon each question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board and shall be a public record."

█ █ The defendants here, in support of their construction inside the twenty-five feet limit, rely on an exception granted verbally by telephone to the zoning administrator, D'Acuti. The chancellor found no meeting of the board was called. It does not appear that the board ever assembled. A reasonable construction of the findings clearly indicate that the action taken by the board was unknown and concealed from the public. No minutes were kept to show the vote of each member on the question submitted. No record was made. Each and every procedural requirement of V. S. 47, §3862 was abandoned and disregarded. By the failure to record such action as was taken, the plaintiffs, and all others aggrieved, were deprived of the right to appeal afforded them by V. S. 47, §3868. By that section the appeal is fixed from the public record of the action of the board. The board, in granting an exception to the requirement of twenty-five feet without notice and hearing was without jurisdiction. Its proceedings were *coram non judice* and void. *Bioni* v. *Haselton*, 99 Vt 453, 459, 134 A 606. Failure to afford notice and an opportunity to be heard violated

508

the very essence of the meaning of "due process of law". *Emerson* v. *Hughes*, 117 Vt 270, 275, 90 A2d 910, 913, 34 ALR 2d 539; *In Re Hanrahan's Will*, 109 Vt 108, 119, 194 A 471. "This proposition is applicable to every court whether of high or low degree". Powers, C. J., *In Re Hanrahan's Will*, *supra*, at 119.

■ Boards of zoning adjustment are quasi-judicial bodies having quasi-judicial functions and duties, 8 McQuillin, Municipal Corporations, Sec. 25.230, p. 434; *Coleman* v. *Board of Appeals*, 281 Mass 112, 183 NE 166; *Heath* v. *Mayor and City Commissioner of Baltimore*, 187 Md 286, 49 A2d 799; *Lynch* v. *Hillsdale Borough*, 136 NJL 129, 54 A2d 723, 725.

■ ■ The notice and hearing afforded the plaintiffs on the defendants' application of July 6 cannot have any effect or render valid the proceedings on the defendants' application of August 7. This was an entirely new proceeding that requested an exception at variance with the zoning regulations. The application of July 6 conformed to the regulations. Moreover the first proceeding had terminated by the issuance of the building permit. The board of adjustment, being a body exercising quasi-judicial functions, can amend its own records, but in so doing it is bound by the rule that controls all such proceedings. Its power in this respect is limited and must be exercised with caution and meticulous attention to fundamental requirements of justice. See *Haven* v. *Ward's Estate*, 118 Vt 499, 502, 114 A2d 413; *In Re Moody's Estate*, 115 Vt 1, 6, 49 A2d 562. A board of adjustment cannot arbitrarily review its own decisions or revoke action finally taken without notice or hearing. 43 C. J. Mun. Corp., Sec. 405 [f], p. 356; 58 Am Jur, Zoning, Sec. 227, pp. 1060-1061; *Miles* v. *McKinney*, 174 Md 551, 199 A 540, 117 ALR 207, 215. "Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of the members or due to the effect of influence exerted upon them or other undesirable elements tending to uncertainty and impermanence." *St. Patrick's Church Corp.* v. *Daniels*, 113 Conn 132, 154 A 343, 345.

■ The illegality of the motel construction is not rescued by the provision of the zoning ordinance as amended, pro-

viding by Sec. 6 "the limit to be maintained from the rear line of lots that have a frontage on one street and a side line on another shall be ten feet from that rear line." By the very language of the ordinance it imposes a ten feet limit requirement on construction on lots adjacent to a corner lot. It does not give the defendants permission to construct up to ten feet of their neighbors side line. Further, even affording to section 6 the meaning the defendants claim for it, it is a provision for general building on unspecified corner lots. Being general, it does not control over the specific provisions of Sections 1 and 3 that deal directly with motels constructed in residential areas. If there be a repugnancy, the specific controls over the general. *In Re James*, 99 Vt 265, 272, 132 A 40.

■ The plaintiffs' standing in courts of equity is well founded and established in many jurisdictions. See annotation in 129 ALR 885; *Fitzgerald* v. *Merard Holding Co.*, 110 Conn 130, 147 A 513, 54 ALR 361; *Garrou* v. *Teaneck Tryon Co.*, 11 NJ 294, 94 A2d 332, 35 ALR2d 1125, 1130. The reason for the plaintiffs' standing is well stated in the Garrou case: "He [the plaintiff] is a property owner whose home adjoins the premises where the violation is occurring and he alleges special damage in that he and his family are being discommoded and his property depreciated. His interest is distinct from and greater than that of the community as a whole and we perceive no reason for denying him fair opportunity to vindicate and protect that interest; we consider that such denial would not only operate unjustly as to him but would retard the public interest."

■ But proper resort to equity jurisdiction does not of necessity invoke the application of extraordinary and severe relief by way of a mandatory injunction. It is the duty of the court of chancery to consider and weigh the relative convenience or inconvenience, the relative injury sought to be cured as compared with the hardship of injunctive relief. 28 Am Jur, Injunctions, Sect. 54, p. 250. Such consideration may dictate an award of damages in lieu of injunction, and the doctrine has application to violations of building restrictions. *Jackson* v. *Stevenson*, 156 Mass 496, 31 NE 691, 693;

*Amerman* v. *Deane*, 132 NY 355, 30 NE 741, 742. Removing the conclusion of Finding 24, this is the effect of the chancellor's report. This was the theory on which the trial proceeded for both parties offered and produced evidence bearing on pecuniary damage inflicted by the construction of the motel. A substitution of damages for injunctive relief was made in *Hazen & Quimby* v. *Lyndonville Bank*, 70 Vt. 543, 556, 41 A 1046, and the principle is not questioned here.

The plaintiffs' prayer for special relief asks that the defendants be enjoined from building within ten feet of the plaintiffs' property line. At the trial, the parties had stipulated "that the motel as erected is over ten feet, four inches, from the westerly side of the premises owned by the plaintiffs and the easterly line of the motel premises." The defendants assert that the plaintiffs, by this agreement, have stipulated that they are not entitled to equitable relief and that the decree should be upheld on this ground alone. We do not recognize the power in the stipulation that the defendants ascribe to it. The entire cause was directed to the resolution of the issue whether the defendants were bound by the twenty-five foot limit imposed by the ordinance and the building permit of July 19, 1955 or whether the defendants, free from such restriction, could lawfully construct their motel at ten feet from the Thompson's lateral line.

The reason for the stipulation does not appear. We note, however, that it is not uncommon for parties to enter such stipulations to avoid the necessity of calling expert witnesses to establish an exact location where there is no dispute on the matter. Whatever the reason, we cannot adjudge that the plaintiffs relinquished the entire footing of their cause of action by the incident of coupling an oral stipulation of this nature to a loosely framed prayer for special relief. The plaintiffs are not to be unjustly cast by their prayer for special relief for their complaint petitions generally for such further equitable relief as their cause requires. The plaintiffs are thereby entitled to such relief as the findings justify. *Hoadley* v. *Hoadley*, 114 Vt. 75, 79, 39 A2d 769; *Firemen's Insurance Co.* v. *Butcher*, 102 Vt 183, 189, 147 A 267; *Averill* v. *Vermont Valley Railroad*, 88 Vt 293, 298, 92 A 220.

■ Ordinarily this situation would permit us to enter a final decree here under the practice allowed by V. S. 47, §1359. However the finding of the chancellor on the subject of damages establishes that the value of the plaintiffs' adjoining property immediately before the motel construction was $14,800 and a value thereafter of $11,100. From this, the chancellor found the plaintiffs sustained $3,700 in pecuniary damage. The defendants excepted to this method of computing the damage but were not in a position to appeal therefrom. The finding was not essential to the decree that dismissed the petition, therefore the defendants were not so aggrieved by the finding to qualify as appellants. A party may not appeal from a decree in his favor for the purpose of obtaining a review of a finding he deems erroneous which is not necessary to support any part of the decree made by the chancellor. *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 US 241, 242, 59 S Ct 860, 83 L Ed 1263. See also 2 Am Jur, Appeal and Error, Secs. 152, 153, pp. 943-945.

■ Although the finding on damages is not before us by way of a bill of exceptions, we are required to examine the finding to determine whether the findings establish what the correct award should be. *Standard Oil Co. of N. Y.* v. *Stevens*, 103 Vt 1, 4, 151 A 507.

The defendants had legal authority to construct their motel a distance of twenty-five feet from the plaintiffs' west line. The plaintiffs do not contend they are entitled to have the corner lot entirely vacated, nor are they entitled to damages which might arise from that part of the occupation of the building site which was lawful. The plaintiffs are not entitled to a recovery of the full depreciation caused by the construction of the motel on the lot adjoining, but only to such depreciation that resulted from the construction at an unauthorized proximity to the plaintiffs' property and beyond the limit prescribed by the ordinance. We cannot tell from the Finding whether the chancellor so limited the damage. We therefore remand the cause for rehearing on the question of damages only. When such amount is determined, a decree should be entered for the plaintiffs to recover that amount with interest and their costs, in accordance with the procedure established

in *McGann* v. *Capital Savings Bank & Trust Co.*, 117 Vt 179 at 190, 89 A2d 123, 130.

*Decree reversed and cause remanded for further proceedings in accordance with the views herein expressed.*