# STATE OF VERMONT

## VERMONT ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| **Town of Grand Isle v. Patry** | } | Docket No. 124-6-02  Vtec |

## Decision

This matter came on for a hearing on the merits at the Grand Isle Courthouse before Environmental Judge Thomas S. Durkin on May 26, 2005.  The Town of Grand Isle (Town) appeared through its attorney, Amanda S.E. Lafferty Cloud, Esq. Defendant Ivan Patry appeared at the beginning of the merits hearing, but chose to leave the courtroom before the hearing was concluded.  Prior to his departure, the Court advised Mr. Patry that the merits hearing would continue as scheduled, even in his absence, so that the Court could receive evidence relevant to the Town's enforcement action and prayers for relief.  Mr. Patry chose to not remain in the courtroom.  After Mr. Patry's departure, the hearing continued and was concluded later that same day.

## Procedural Background

This matter has a long procedural history which is briefly summarized below. The case was most recently remanded to this Court by the Vermont Supreme Court in its Decision dated March 9, 2004.[1]  Grand Isle v. Patry, 2004 Vt. 24, ¶4-7.  The Vermont Supreme Court in that Decision rejected Defendant's claims that his land was immunized from municipal regulation by the Charter of the Two Heroes of 1779 and

---

[1]  Defendant petitioned to the U.S. Supreme Court to review his claims following the rejection of such claims by the Vermont Supreme Court.  By letter dated October 13, 2004, the Office of the Clerk of the U.S. Supreme Court advised that on October 4, 2004, the U.S. Supreme Court had entered an Order denying Defendant's petition for a writ of certiorari.  Defendant thereafter argued that it was improper for this Court to proceed with the case as remanded by the Vermont Supreme Court.  This Court rejected Defendant's arguments, as announced in the decisions of April 7 and 20, 2005.

the American-British Treaty of 1783. It also upheld this Court's entry of judgment of October 14, 2002 and Decision and Order regarding the Town's request for a preliminary injunction against Mr. Patry, dated and issued June 14, 2002. The Vermont Supreme Court specifically referenced the following findings and legal conclusions previously rendered by and referenced in this Court's 2002 decision and entry of judgment, which we incorporate herein by the following reference:

1. Mr. Patry first acquired the subject property by quit-claim deed on May 14, 2002.

2. The subject property is a small parcel, measuring 45 feet wide and 480 feet long.

3. Due to its small size and narrowness, the construction or placement of any dwelling on the Patry property would violate the 25 foot setback requirement for the zoning district in which the property lies.

4. The subject property once had a dwelling on it, but the dwelling was removed prior to Mr. Patry's purchase. This former dwelling was served by an on-site septic system that had since failed.

5. The subject property may or may not have been encumbered by a wetland. The 2002 Environmental Court decision and judgment reference that the site was wet and required drainage, and that Defendant and people working on his behalf had installed perforated drainage pipe and crushed stone in the rear of the property. This work caused water to flow from Defendant's property onto a neighbor's property.

6. Defendant also placed a travel camper on the property, with the intention of using it as a residence.

7. Defendant also uncovered the failed septic system, apparently to drain and repair it, and possibly to hook it up to his camper.

8. The Supreme Court affirmed this Court's preliminary injunction order and remanded the matter back to this Court. In doing so, the Supreme Court specifically referenced and affirmed this Court's previous determinations that Defendant must complete the following before continuing with his development of the subject property:

   a. apply for all necessary municipal permits;

   b. apply for all necessary setback variances;

c. remove the travel trailer from the property and not return it until such variances and permits are received;

d. apply for a drainage permit for the drainage work already completed;

e. apply for a septic permit; and

f. apply for a building permit.

On remand, this Court is charged with addressing the issues remaining in the Town's Complaint:  determinations of (a) whether a permanent, mandatory injunction should issue and (b) what assessment of penalties, if any, should be awarded in light of Defendant's zoning violations.  Based upon the admissible evidence presented at the May 26, 2005 hearing, this Court makes the following additional factual determinations:

## Additional Findings of Fact

1. On May 20, 2002, the then Town Zoning Administrator issued a written notice to Defendant detailing the violations of the zoning ordinance that form the basis of the Town's enforcement complaint.  This notice also advised Defendant that he could appeal to the Town Development Review Board (DRB) within fifteen days.

2. Defendant chose not to appeal the May 20, 2002 Notice of alleged zoning violation.

3. Since this Court's Entry Order of October 14, 2002, Defendant has failed and refused to:

a. apply for any of the necessary municipal permits;

b. apply for any of the necessary setback variances;

c. cease and desist from any further work on any building, other structure or the wastewater disposal system on his property until first receiving the necessary variances and permits;

d. remove the travel trailer from the property;

e. apply for a drainage permit for the drainage work already completed;

f. cease and desist from any further drainage work on his property until first receiving a drainage permit;

g. apply for a septic permit;

h. cease and desist from any further work on the replacement of the failed septic system on his property until first receiving a septic permit;

i. restore the property to the condition it was in prior to his commencement of unlawful and unpermitted land development on May 14, 2002; and

j. apply for a building permit.

4. The current and former Zoning Administrators inspected Defendant's property on several occasions during the period from May 20, 2002 through May 26, 2004. Their inspections revealed that Defendant allowed the above referenced zoning violations to continue and took no discernable action to cease or mitigate such violations.

5. Defendant has disregarded the violation notice issued by the Town and the prior orders of this Court, even after exhausting all avenues of appeal, without success, over the course of over three years. Defendant has shown no intention of abiding by such Town notices or Court orders.

6. The undisputed evidence at trial was that as of the trial date (May 26, 2005), Defendant's zoning violations continued for one thousand, one hundred and one (1,101) days after the notice from the Town on May 20, 2002 that his actions, detailed above, were regarded as zoning violations.

7. Since trial, the Court has not received evidence from either the Town or Defendant that Defendant has taken any actions to remedy his zoning violations, thereby making the requested injunction less necessary. In fact, the only filings received from Defendant since the trial evidence that he persists in his assertion that his property is immune from municipal regulation, even though he has exhausted his appellate rights, including filings to the U. S. Supreme Court, without success.

8. As of May 31, 2005, the Town has expended $18,760.81 in attorney's fees and litigation expenses directly related to prosecuting Defendant's zoning violations. The current Zoning Administrator has devoted no less then 10 hours directly related to responding to Defendant's zoning violations; her time is charged at the rate of $15.00 per hour.

## Conclusions

Two issues remain in this enforcement action: first, is the Town entitled to the requested injunction and second, what penalties should be imposed in response to Defendant's zoning violations. We take those legal issues in that order.

Initially, before addressing either issue, it is appropriate to state clearly one general conclusion that flows from Defendant's actions: Defendant has never contested that his actions constitute multiple violations of the Town zoning ordinance. Rather, all Defendant's energies in this legal proceeding have been focused on his assertion that his property enjoys immunity from municipal regulation because of the Charter of the Two Heroes of 1779 and the American-British Treaty of 1783. In this regard, Defendant has failed to convince this Court, our Supreme Court and the U. S. Supreme Court that his legal argument has merit. Since the undersigned was not the judge that previously presided in this enforcement action, it seems appropriate to reiterate that Defendant has failed to present any acceptable legal authority for his argument. We therefore repeat: his claimed defense does not have merit.

Further, Defendant's failure to timely appeal the Town's notice of violation bars him from challenging the Town's allegations in this enforcement proceeding. Town of Charlotte v. Richmond, 158 Vt. 354, 356-7 (1992). The statutory provisions relating to challenges of zoning violation allegations provide an exclusive remedy: appeal of the notice of violation within 15 days to the appropriate municipal panel. 24 V.S.A. § 4472. Thus, the Town's allegations of zoning violations stand as uncontestable facts where, as

here, a defendant has failed or refused to follow the proper administrative procedure for contesting the Town's allegations. With this factual foundation in mind, we turn to the remaining legal issues in this case.

## A.      Mandatory injunction.

Actions in which a party requests an injunction often cause the trial court to engage in a balancing test. See Thompson v. Smith, 119 Vt. 488, 509-10 (1957). One exception to that general rule occurs in cases, such as here, where a municipality is requesting an injunction as part of a zoning enforcement action. In such cases, the authority to request the injunction derives from 24 V.S.A. § 4445.[2] The statute has been interpreted as directing a trial court to

> focus on two areas of inquiry. The first is whether the violation of the zoning ordinance is substantial . . . . [O]nce the court finds that a violation is substantial, further balancing of injury and cost is generally inappropriate.
>
> The second area is whether the landowner's violation is innocent or, alternatively, involves conscious wrongdoing. Courts have generally found that a conscious decision to go forward, in the face of a direction not to from the regulatory body, outweighs factors pointing against the issuance of a mandatory injunction.

Town of Sherburne v. Carpenter, 155 Vt. 126, 131-32 (1990)(citations omitted).

The violations that occurred on Mr. Patry's property were substantial. His utter refusal to obtain any of the municipal permits necessary for the development of his undersized lot and disregard for the potential damages caused by his unregulated drainage and septic work define the substantiality of his actions. Mr. Patry began working on the development of his property within days of acquiring title. His

---

[2]  Section 4445 was the applicable statutory provision in effect when this action was filed in 2002. It was replaced by 24 V.S.A. § 4452, in substantially the same form, in Act 115 of 2004 (the so-called "Permit Reform Act of 2004").

activities were so conspicuous that they resulted in the Zoning Administrator issuing the notice of violation shortly after Mr. Patry acquired title.

Neither the issuance of the formal violation notice, nor the long history of this enforcement action, appears to have deterred Mr. Patry from continuing his development plans for the property. Even when faced with the 2005 merits hearing on this action, Mr. Patry's focus appeared solely upon his perceived rights and not the real dangers flowing from his unregulated development. Given Mr. Patry's apparent disregard for the important public safety and health issues zoning regulations are intended to protect, a mandatory injunction is appropriate and necessary in this case.

## B. Penalties.

Zoning violations are considered to be potentially serious offenses by our Legislature, as is evidenced by the authorization to impose a civil penalty of up to $100.00 for each day that the violation continues, pursuant to 24 V.S.A. § 4444(a).[3] As a civil, and not criminal penalty, any penalty authorized by § 4444(a) may not be punitive in nature; the penalty must be "rationally related to the damages suffered from landowner's violation of [the] Town's bylaws." Town of Hinesburg v. Dunkling, 167 Vt. 514, 528 (1998).

We cannot determine on the record before us the full cost or expense caused by Defendant's continued, willful violation of the Town bylaws here. Cost evidence was not provided, and perhaps not possible, for the flooding of the neighbor's property caused by Defendant's unpermitted drainage work. There is also an absence, perhaps due to impossibility, of evidence presented on the cost to his neighbors and community for Defendant's unregulated septic repair work or refusal to return his property to a safe or stable condition until he receives the necessary permits.

---

[3] See footnote 2, above. Section 4444 was replaced by § 4451 in the Permit Reform Act of 2004.

But the cost evidence the Town was able to produce here does provide the Court with some evidence of the costs attributable to Defendant's willful zoning violations.

Section 4444(a) has been interpreted to authorize a penalty which is "remedial in nature, designed to cover the costs of prosecution." Hinesburg v. Dunkling, 167 Vt. at 527, citing United States v. Halper, 490 U.S. 435, 453 (1989)(Kennedy, J., concurring).

In light of Defendant's zoning violations and his continued refusal to abide by Zoning Administrator's authorized directives, and this Court's 2004 decision, to cease his unpermitted development of his property, we find the total town expenses of $18,910.81 for the three year period from May 20, 2002 to May 26, 2005 to be reasonable. We therefore impose a per diem fine of $17.176 against Defendant for that period. Further, given that the undisputed evidence at trial revealed that Defendant continued his actions in violation of the ordinance up to and through the day of trial, with no stated intention to cease his actions in violation of the ordinance, we find that the Town is entitled to an additional fine of $15.00 per day for each day after May 26, 2005 that Defendant fails and refuses to abide by this Court's June 14, 2002 Decision, October 14, 2002 Entry of Judgment and the Decision and Judgment entered this day.

Dated at Berlin, Vermont this 6th day of March, 2006.

_____

Thomas S. Durkin, Environmental Judge